# UNITED STATES DISTRICT COURT

for the
Western District of Washington

| | FILED _____ LODGED |
| | _____ RECEIVED |
| | **May 21, 2024** |
| | CLERK U.S. DISTRICT COURT |
| | WESTERN DISTRICT OF WASHINGTON AT TACOMA |
| | BY _____ DEPUTY |

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Target Location Apartment, Person, and Vehicle )
located in the city of Tacoma, Washington, more fully )
described in Attachments A1 through A3 )

Case No.   3:24-mj-05151

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Target Location Apartment, Person and Vehicle, more fully described in Attachments A1 through A3.

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 § 922(o) | Unlawful Possession of a Machinegun |
| 26 § 5861(d) and (k) | Unlawful Import and Possession of Machinegun |

The application is based on these facts:

✓ See Affidavit of SA Noell Heckendorn, continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

NOELL M HECKENDORN   Digitally signed by NOELL M HECKENDORN
Date: 2024.05.21 12:15:50 -07'00'

*Applicant's signature*

Noell Heckendorn, Special Agent

*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:   05/21/2024

*Judge's signature*

City and state:   Tacoma, Washington

David W. Christel, United States Magistrate Judge

*Printed name and title*

2024R00629

1

**AFFIDAVIT OF SPECIAL AGENT NOELL HECKENDORN**

2

3 STATE OF WASHINGTON )

4 ) ss

5 COUNTY OF PIERCE )

6

7 I, NOELL HECKENDORN, a Special Agent with Homeland Security Investigations,

8 Seattle Field Office, having been duly sworn, state as follows:

9 <u>**AFFIANT BACKGROUND**</u>

10      1.     I am a Special Agent with Homeland Security Investigations (HSI),

11 Department of Homeland Security, and have been so employed since March 2022. In that

12 capacity, I investigate narcotics. I am currently assigned to the Seattle Field Division,

13 Seattle Office. Prior to my employment with HSI, I was a Customs and Border Protection

14 Officer with Customs and Border Protection (CBP), in the Seattle Area of Responsibility

15 for three and a half years.

16      2.     My training and experience include, but is not limited to, the twelve-week

17 Criminal Investigation Training Program (CITP) at the Federal Law Enforcement

18 Training Center (FLETC), a fourteen-week Homeland Security Investigations Special

19 Agent Training (HSISAT) program, and approximately 17-week CBP Field Operations

20 Academy program at the FLETC.

21      3.     During my law enforcement career, I have become familiar with

22 investigations of drug trafficking organizations, methods of importation and exportation,

23 distribution, and smuggling of controlled substances, and financial and money laundering

24 investigations. I have participated in investigations involving organizations trafficking in

25 controlled substances, including heroin, and such investigations have resulted in the

26 arrests of drug traffickers and seizures of controlled substances. I have received firearms

27

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    training to include handling and have participated in search warrants where firearms were

2    seized.

3        4.      I make this affidavit in support of search warrants for (1) the current

4    residence of James Benjamin BECK, **12720 C St S, Apt L, Tacoma, WA 98444**

5    (**SUBJECT PREMISES**) (as described in Attachment A1) for the items described n

6    Attachment B, which is incorporated herein by reference; (2) the person of James

7    Benjamin BECK (as described in Attachment A2) for the items to be seized are described

8    in Attachment B, which is incorporated herein by reference; and (3) a vehicle registered

9    to James Benjamin BECK and Aimee White, i.e., a **black Nissan Murano with**

10   **Washington plate CEV0640 (TV1)** (as described in Attachment A3) for the items to be

11   seized are described in Attachment B, which is incorporated herein by reference.

12       5.      I also make this affidavit to search the person of James BECK for any smart

13   phones, and to seize the items described in Attachment B of this affidavit.

14       6.      As discussed below, there is probable cause to believe that James BECK, a

15   convicted felon[1], resides at the **SUBJECT PREMISES**, and may have one or more

16   firearms stored at the **SUBJECT PREMISES**. In addition, there is probable cause to

17   believe that **BECK** has imported Glock switches. Finally, there is probable cause to

18   believe that **BECK** has ordered Glock switches using the internet, which he could have

19   accomplished using a smart phone.

20       7.      The facts set forth in this affidavit arise from my personal and direct

21   participation in the investigation, my experience and training as an HSI Special Agent,

22   my conversations with witnesses and other law enforcement personnel participating in

23   this and related investigations, and my review of relevant documents and reports. I have

---

[1] Beck has multiple felony criminal convictions, including juvenile convictions for assault 3 and forgery and adult felony convictions for delivering firearms to an ineligible person and escape in the second degree. He also has misdemeanor domestic violence convictions including assault 4 domestic violence, interfering with reporting of domestic violence, domestic violence no contact order violations, and reckless driving with a domestic violence enhancement. He is prohibited from owning firearms under Washington State law based on his prior felony and domestic violence convictions. None of his previous convictions had a standard sentencing range above one year.

AFFIDAVIT OF SPECIAL AGENT HECKENDORN - 2
USAO No. 2024R00629

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  not included each and every fact known to me or other investigative personnel

2  concerning this investigation. My specialized training and experience in investigations, as

3  well as the assistance and input of experienced fellow investigators, form a basis for my

4  opinions and conclusions, which I drew from the facts set forth herein.

5       8.     Based on my training and experience and the facts as set forth in this

6  affidavit, there is probable cause to believe that **BECK** has committed, is committing,

7  and will continue to commit violations of Title 18, United States Code, Section 922(o)

8  (Unlawful Possession of a Machinegun), Title 26, United States Code, Sections 5861(d)

9  and (k) (Unlawful Import and Possession of Machinegun), and related offenses. There is

10 probable cause to search his residence, person, and vehicle, as described in Attachments

11 A1 through A3, for evidence and instrumentalities of these crimes as further described in

12 Attachment B.

### RELEVANT LAW

14      9.     Title 26, United States Code, Section 5845(b) defines a machinegun in part

15 as "any part designed and intended solely and exclusively, or combination of parts

16 designed and intended, for use in converting a weapon into a machinegun."

17      10.    Title 18, United States Code, Section 922(o) prohibits a person from

18 transferring or possessing a machinegun.

19      11.    Title 26, United States Code, Section 5861(d), prohibits a person from

20 receiving or possessing a firearm not registered to the person in the National Firearms

21 Registration and Transfer Record. Title 26, United States Code, Section 5861(d) prohibits

22 a person from receiving or possessing a firearm which has been imported or brought into

23 the United States in violation of section 5844. A machinegun, as defined above, is a type

24 of firearm under this section.[2]

25

26
---
27 [2] This affidavit uses the term "machinegun" to refer both to the Title 18 and Title 26 provisions cited under this
section.

AFFIDAVIT OF SPECIAL AGENT HECKENDORN - 3
USAO No. 2024R00629

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    12.    Title 26, United States Code, Section 5844 prohibits any firearm from

2  being imported or brought into the United States or any territory under its control or

3  jurisdiction unless the importer establishes, under regulations as may be prescribed by the

4  Secretary, that the firearm to be imported or brought in is—

5          a.  being imported or brought in for the use of the United States or any

6              department, independent establishment, or agency thereof or any State or

7              possession or any political subdivision thereof; or

8          b.  being imported or brought in for scientific or research purposes; or

9          c.  being imported or brought in solely for testing or use as a model by a

10              registered manufacturer or solely for use as a sample by a registered

11              importer or registered dealer.

12                **SUMMARY OF PROBABLE CAUSE**

13    13.    On May 14, 2024, Customs and Border Protection (CBP) inspected a

14  shipment being imported from China into the United States that was described as

15  containing a AUTO PART. The shipment was found to contain a Glock switch. The

16  shipper of the package was manifested as: Shenzhen Sunyou Cross Border L with a

17  shipping address of Room 19E Bldg A Zhongmei Rd Longua Shenzhen, China. The

18  shipment was addressed to James **BECK** at address 12720 C ST S, APT P, Tacoma, WA,

19  98444.

20    14.    CBP notified Homeland Security Investigations (HSI) of the package, the

21  Glock switch it contained, and provided shipment information. Law enforcement systems

22  indicate multiple shipments, made by the shipper Shenzhen Sunyou Cross Border L, have

23  been listed on the manifest as "AUTO PART" and upon examination have been found to

24  contain Glock switches.

25    15.    Agents were notified that the parcel was scheduled to arrive on May 1,

26  2024, onboard China Airlines international flight 5154 from China.

27

AFFIDAVIT OF SPECIAL AGENT HECKENDORN - 4
USAO No. 2024R00629

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    16.    Utilizing law enforcement systems, HSI was able to identify the consignee

2  as James Benjamin **BECK**. Washington State Department of Licensing has **BECK** listed

3  at residence 12720 C ST S, APT P, TACOMA WA, 98444, the same residence listed on

4  the shipment inspected by CBP.

5    17.    On approximately May 15, 2024, agents, and analysts, utilizing a law

6  enforcement database, identified another shipment which is not known to have been

7  examined by CBP. The shipper of the package was manifested as: XING REN TRADE

8  CO LTD with a shipping address of QING NIAN LU NO 17 BEIJING, China. The

9  shipment consignee is manifested as James **BECK** at address 12720 C ST S, APT P,

10  Tacoma, WA, 98444. The shipment is described as containing AUTO PARTS, as the

11  shipment described above. Systems indicate the package has an entry indicating the

12  package's release date was May 6, 2024. Law enforcement systems indicate multiple

13  shipments, made by the shipper XING REN TRADE CO LTD, have been listed on the

14  manifest as AUTO PART and upon examination have been found to contain Glock

15  switches.

16    18.    Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special

17  Agent Brian Arnold has reviewed pictures of the Glock switch that was seized that was

18  being shipped to BECK. Special Agent Arnold has received specialized training on

19  firearms, which includes training on glock switches. Special Agent Arnold confirmed that

20  the item being shipped to BECK preliminarily appears to be a switch, which, when

21  installed on a Glock style pistol, makes the pistol sully automatic.

22    19.    In May 2024, agents confirmed that BECK is prohibited from possessing

23  firearms in the state of Washington.

24    20.    On March 13, 2024, **BECK**'s seven-year-old child reported to King County

25  Sheriff's Office (KCSO) that **BECK** threatened to kill the child's mother, who is

26  **BECK**'s ex-romantic partner. The child also reported at that time that **BECK** possessed a

27  firearm. The child's mother then got a temporary protection order by Superior Court of

AFFIDAVIT OF SPECIAL AGENT HECKENDORN - 5
USAO No. 2024R00629

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   Washington of Pierce County with **BECK** named as the respondent. That order was

2   initially issued on March 15, 2024, and reissued on April 29, 2024. A return of service on

3   **BECK** was filed on May 17, 2024. The order remains in effect.

4         21.   On May 9, 2024, another temporary protection order was granted by

5   Superior Court of Washington of Pierce County with BECK named as the respondent. A

6   different ex-romantic partner of **BECK**'s is listed as the protected party. The temporary

7   protection order states that BECK is excluded and must stay away from the protected

8   person's residence. This provision is followed by a handwritten note stating that **BECK**

9   may reside at his mother's apartment, apartment "L," but may not go upstairs where

10   petitioners apartment is. Agents believe that this protected party lives in apartment "P,"

11   where the Glock switch was originally ordered to be delivered. The Glock switch was

12   ordered prior to BECK being ordered to live in apartment L instead of P.

13         22.   On May 17, 2024, agents set up surveillance around the **SUBJECT**

14   **PREMISES**. Agents observed a black Nissan Murano (**TV1**) enter the apartment parking

15   lot. Agents observed BECK exit **TV1** walk towards the building and enter the **Subject**

16   **Premises** (specifically, apartment L). **BECK** was seen exiting the apartment with a dog,

17   walk it around outside before returning and entering apartment L with the dog. **TV1** is

18   also registered to **BECK** with the **SUBJECT PREMISES** as his listed address.

19         23.   On May 17, 2024, a search warrant was signed by Pierce County Superior

20   Court Judge Stan Rumbaugh for **SUBJECT PREMISES, TV1,** and the person of

21   **BECK**.

22         24.   On May 17, 2024, agents conducted mobile surveillance of BECK and an

23   unknown individual in **TV1**. At approximately 6:36 p.m., agents gave the arrest signal

24   and moved in to conduct a vehicle interdiction. Agents, wearing clear police markings,

25   initiated vehicle lights and sirens. During the attempted vehicle interdiction, **BECK**

26   pulled away in **TV1**, nearly hitting both agents and agent vehicles before departing the

27   location. Agents lost visual on the vehicle.

AFFIDAVIT OF SPECIAL AGENT HECKENDORN - 6
USAO No. 2024R00629

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    25.    On May 18, 2024, a ping warrant was signed by Pierce County Superior

2  Court Judge Stan Rumbaugh for BECK's phone. Agents observed TV1 parked in the lot

3  of Alpine Vistas Apartments located at 2422 70ᵗʰ Ave W, Tacoma, WA 98466. Phone

4  pings indicate **BECK'**s mobile device was in the vicinity of the **SUBJECT PREMISES**

5  on May 20, 2024 at from approximately 9:57 pm to approximately 10:42 pm. At

6  approximately 6:26 a.m., agents conducted surveillance of Alpine Vistas Apartments,

7  where **TV1** was observed parked in the lot.

8                    **TRAINING AND EXPERIENCE ON FIREARMS OFFENSES**

9    26.    From my training, personal experience, and the collective experiences

10  related to me by other law enforcement officers who conduct who conduct firearms

11  investigations, I am aware of the following:

12            a.    Persons who possess, purchase, or sell firearms generally maintain

13  records of their firearm transactions as items of value and usually keep them in their

14  residence, or in places that are readily accessible, and under their physical control, such

15  in their digital devices. It has been my experience that prohibited individuals who own

16  firearms illegally will keep the contact information of the individual who is supplying

17  firearms to prohibited individuals or other individuals involved in criminal activities for

18  future purchases or referrals. Such information is also kept on digital devices.

19            b.    Many people also keep mementos of their firearms, including digital

20  photographs or recordings of themselves possessing or using firearms on their digital

21  devices. These photographs and recordings are often shared via social media, text

22  messages, and over text messaging applications.

23            c.    Those who illegally possess firearms often sell their firearms and

24  purchase firearms. Correspondence between persons buying and selling firearms often

25  occurs over phone calls, e-mail, text message, and social media message to and from

26  smartphones, laptops, or other digital devices. This includes sending photos of the

27  firearm between the seller and the buyer, as well as negotiation of price. In my

AFFIDAVIT OF SPECIAL AGENT HECKENDORN - 7
USAO No. 2024R00629

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  experience, individuals who engage in street sales of firearms frequently use phone calls,

2  e-mail, and text messages to communicate with each other regarding firearms that the sell

3  or offer for sale. In addition, it is common for individuals engaging in the unlawful sale

4  of firearms to have photographs of firearms they or other individuals working with them

5  possess on their cellular phones and other digital devices as they frequently send these

6  photos to each other to boast of their firearms possession and/or to facilitate sales or

7  transfers of firearms.

8          d.      Individuals engaged in the illegal purchase or sale of firearms and

9  other contraband often use multiple digital devices.

10         27.     Based on my training and experience, I know that persons who order items,

11  even contraband, from overseas, often retain records relating to the order. I also know

12  that persons who order switches almost always purchase them to use with an existing

13  firearm. I also know that persons typically store their own firearms in their personal

14  residence and vehicles.

15         28.     A Glock switch is an illegal aftermarket product that can be installed on

16  baseplate of Glock slide that turns the pistol into fully automatic machine gun. A switch

17  is illegal to install or possess. A Glock switch is a "part designed and intended solely and

18  exclusively for use in converting a weapon into a machinegun," and is therefore a

19  machinegun under Title 26, United States Code, Section 5845(b).

## **BIOMETRIC UNLOCK**

21         29.     The warrant I am applying for would permit law enforcement to obtain

22  from certain individuals the display of physical biometric characteristics (such as

23  fingerprint, thumbprint, or facial characteristics) in order to unlock devices subject to

24  search and seizure pursuant to this warrant. I seek this authority based on the following:

25         30.     I know from my training and experience, as well as from information found

26  in publicly available materials published by device manufacturers, that many electronic

27  devices, particularly newer mobile devices and laptops, offer their users the ability to

1  unlock the device through biometric features in lieu of a numeric or alphanumeric

2  passcode or password. These biometric features include fingerprint scanners and facial

3  recognition features. Some devices offer a combination of these biometric features, and

4  the user of such devices can select which features they would like to utilize.

5        31.     If a device is equipped with a fingerprint scanner, a user may enable the

6  ability to unlock the device through his or her fingerprints. For example, Apple offers a

7  feature called "Touch ID," which allows a user to register up to five fingerprints that can

8  unlock a device. Once a fingerprint is registered, a user can unlock the device by pressing

9  the relevant finger to the device's Touch ID sensor, which is found in the round button

10  (often referred to as the "home" button) located at the bottom center of the front of the

11  device. The fingerprint sensors found on devices produced by other manufacturers have

12  different names but operate similarly to Touch ID.

13        32.     If a device is equipped with a facial recognition feature, a user may enable

14  the ability to unlock the device through his or her face, iris, or retina. For example, Apple

15  offers a facial recognition feature called "Face ID."  During the Face ID registration

16  process, the user holds the device in front of his or her face. The device's camera then

17  analyzes and records data based on the user's facial characteristics. The device can then

18  be unlocked if the camera detects a face with characteristics that match those of the

19  registered face. Facial recognition features found on devices produced by other

20  manufacturers have different names but operate similarly to Face ID.

21        33.     While not as prolific on digital devices as fingerprint and facial-recognition

22  features, both iris and retina scanning features exist for securing devices/data. The human

23  iris, like a fingerprint, contains complex patterns that are unique and stable. Iris

24  recognition technology uses mathematical pattern-recognition techniques to map the iris

25  using infrared light. Similarly, retina scanning casts infrared light into a person's eye to

26  map the unique variations of a person's retinal blood vessels. A user can register one or

27  both eyes to be used to unlock a device with these features. To activate the feature, the

AFFIDAVIT OF SPECIAL AGENT HECKENDORN - 9
USAO No. 2024R00629

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  user holds the device in front of his or her face while the device directs an infrared light

2  toward the user's face and activates an infrared sensitive camera to record data from the

3  person's eyes. The device is then unlocked if the camera detects the registered eye.

4      34.    In my training and experience, users of electronic devices often enable the

5  aforementioned biometric features because they are considered to be a more convenient

6  way to unlock a device than by entering a numeric or alphanumeric passcode or

7  password. Moreover, in some instances, biometric features are considered to be a more

8  secure way to protect a device's contents. This is particularly true when the users of a

9  device are engaged in criminal activities and thus have a heightened concern about

10 securing the contents of a device.

11     35.    As discussed in this affidavit, based on my training and experience I

12 believe that one or more digital devices will be found during the search. The passcode or

13 password that would unlock the device(s) subject to search under this warrant is not

14 known to law enforcement. Thus, law enforcement personnel may not otherwise be able

15 to access the data contained within the device(s), making the use of biometric features

16 necessary to the execution of the search authorized by this warrant.

17     36.    I also know from my training and experience, as well as from information

18 found in publicly available materials including those published by device manufacturers,

19 that biometric features will not unlock a device in some circumstances even if such

20 features are enabled. This can occur when a device has been restarted, inactive, or has not

21 been unlocked for a certain period of time. For example, Apple devices cannot be

22 unlocked using Touch ID when (1) more than 48 hours has elapsed since the device was

23 last unlocked or (2) when the device has not been unlocked using a fingerprint for 4 hours

24 and the passcode or password has not been entered in the last 156 hours. Biometric

25 features from other brands carry similar restrictions. Thus, in the event law enforcement

26 personnel encounter a locked device equipped with biometric features, the opportunity to

27 unlock the device through a biometric feature may exist for only a short time.

AFFIDAVIT OF SPECIAL AGENT HECKENDORN - 10
USAO No. 2024R00629

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1      37.      In my training and experience, the person who is in possession of a device

2  or has the device among his or her belongings at the time the device is found is likely a

3  user of the device. However, in my training and experience, that person may not be the

4  only user of the device, and may not be the only individual whose physical characteristics

5  are among those that will unlock the device via biometric features. Furthermore, while

6  physical proximity is an important factor in determining who is the user of a device, it is

7  only one among many other factors that may exist.

8      38.      Due to the foregoing, I request that if law enforcement personnel encounter

9  a device that is subject to search and seizure pursuant to this warrant and may be

10  unlocked using one of the aforementioned biometric features, and if law enforcement

11  reasonably believes James BECK is a user of the device, then – for the purpose of

12  attempting to unlock the device in order to search the contents as authorized by this

13  warrant – law enforcement personnel shall be authorized to:(1) press or swipe the fingers

14  (including thumbs) of James BECK to the fingerprint scanner of the device; and/or (2)

15  hold the device in front of the face and open eyes of James BECK and activate the facial,

16  iris, or retina recognition feature.

17      39.      In pressing or swiping an individual's thumb or finger onto a device and in

18  holding a device in front of an individual's face and open eyes, law enforcement may not

19  use excessive force, as defined in *Graham v. Connor*, 490 U.S. 386 (1989); specifically,

20  law enforcement may use no more than objectively reasonable force in light of the facts

21  and circumstances confronting them.

## **CONCLUSION**

23      40.      For all the reasons described above, there is probable cause to believe that

24  James Benjamin BECK has committed, is committing, and will continue to commit

25  violations of Title 18, United States Code, Section 922(o) (Unlawful Possession of a

26  Machinegun), Title 26, United States Code, Sections 5861(c) and (k) (Unlawful Import

27  and Possession of Machinegun); and related offenses.

AFFIDAVIT OF SPECIAL AGENT HECKENDORN - 11
USAO No. 2024R00629

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1         41.     There is probable cause to believe that the items to be seized as described in

2   Attachment B will be found in a search of (1) the residence of James **BECK**, **12720 C St**

3   **S, Apt L, Tacoma, WA 98444** (as described in attachment A1), (2) the person of James

4   Benjamin BECK (as described in attachment A2), and (3) a **black Nissan Murano with**

5   **Washington plate CEV0640** (as described in attachment A3),

6         42.     I am submitting this affidavit and application electronically in accordance

7   with Local Criminal Rule 41(d)(3).

8

9                                     NOELL M HECKENDORN     Digitally signed by NOELL M HECKENDORN
Date: 2024.05.21 12:17:15 -07'00'

10                                     NOELL HECKENDORN, Affiant

11                                     Special Agent, HSI

12

13       The above-named agent provided a sworn statement attesting to the truth of the

14   contents of the foregoing affidavit by telephone on 21st day of May 2024.

15

16

17                                     _____

18                                     The Honorable David W. Christel
                                    United States Magistrate Judge

19

20

21

22

23

24

25

26

27

AFFIDAVIT OF SPECIAL AGENT HECKENDORN - 12
USAO No. 2024R00629

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1

2

**ATTACHMENT A1**

**LOCATION TO BE SEARCHED**

3   The location to be searched is the apartment located at **12720 C St S, Apt L,**

4   **Tacoma, WA 98444,** located in the city of Tacoma, County of Pierce, State of

5   Washington**.** The residence is located at a two-story apartment complex. Apartment L is

6   located on the ground floor.

7

8

9

10

11

12

13

14

15

16



17   The search is to include all assigned parking garages/garage spaces and any

18   vehicle parked in those assigned garages or spaces whether described in Attachment A3

19   or not and assigned storage units (whether internal or external).

20

21

22

23

24

25

26

27

Attachment A1 - 1
USAO No. 2024R00629

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## ATTACHMENT A2

## PERSON TO BE SEARCHED

This warrant authorizes the search of the person James Benjamin BECK (DOB 1996), a Caucasian male, current address 12720 C St S, Apt L, Tacoma, WA 98444, and any cellular phones found on his person. According to Washington Department of Licensing records, Beck has blue eyes, is approximately 6'0" and weighs approximately 185 pounds.



Attachment A2 - 1
USAO No. 2024R00629

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1

2

**ATTACHMENT A3**

**VEHICLE TO BE SEARCHED**

3        The vehicle to be searched is a **black Nissan Murano with Washington plate**

4 **CEV0640.** The vehicle is registered to James BECK and Aimee White at 12720 C St S,

5 Apt L, Tacoma, WA 98444.

6

7

8

9

10



11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Attachment A3 - 1
USAO No. 2024R00629

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**ATTACHMENT B**

**LIST OF ITEMS TO BE SEARCHED FOR AND THINGS TO BE SEIZED**

From the location, person, and vehicle described in Attachments A1, A2, and A3, the government is authorized to search for and seize the following items that constitute evidence and/or are fruits of commission of the following crimes: Title 18, United States Code, Section 922(o) (Unlawful Possession of a Machinegun), Title 26, United States Code, Sections 5861(c) and (k) (Unlawful Import and Possession of Machinegun); and related offenses:

1. Any glock switches or other machine gun conversion devices;

2. Any firearms, firearms parts, and ammunition;

3. Any documents reflecting any purchases or shipments from Shenzhen Sunyou Cross Border L or XING REN TRADE CO LTD.

4. Any packages shipped directly from China.

5. Documents sufficient to show dominion and control of the premises and areas searched or any other owned premises, such as storage units.

6. Smart phones belonging to James Beck may be seized, and searched for the following items:

   a. Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

   b. Stored list of recent received, sent, and missed calls;

   c. Stored contact information;

   d. Internet history and stored internet information pertaining to the ordering of any silencers.

   e. Photographs of firearms, firearm parts to include glock switches, or ammunition

Attachment B - 1
USAO No. 2024R00629

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    During the execution of the search of the residence described in Attachment A1

2  and/or person described in Attachment A2 or the vehicle described in Attachment A3, if

3  law enforcement encounters a smartphone or other electronic device equipped with a

4  biometric-unlock feature, and if law enforcement reasonably suspects James Beck is a

5  user of the device, then – for the purpose of attempting to unlock the device in order to

6  search the contents as authorized by this warrant – law enforcement personnel are

7  authorized to: (1) press or swipe the fingers (including thumbs) of James Beck to the

8  fingerprint scanner of the device; and/or (2) hold the device in front of the face and open

9  eyes of those same individuals and activate the facial, iris, or retina recognition feature.

10    In pressing or swiping an individual's thumb or finger onto a device and in

11  holding a device in front of an individual's face and open eyes, law enforcement may not

12  use excessive force, as defined in *Graham v. Connor*, 490 U.S. 386 (1989); specifically,

13  law enforcement may use no more than objectively reasonable force in light of the facts

14  and circumstances confronting them.

15

16

17

18

19

20

21

22

23

24

25

26

27

Attachment B - 2
USAO No. 2024R00629

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800